UNITED STATES of America,
Plaintiff,

v.

ASHLAND OIL AND TRANSPORTA-
TION COMPANY, a subsidiary of
Ashland Oil, Inc., Defendant.

Crim. A. No. 6092.

United States District Court,
W. D. Kentucky,
Owensboro Division.

Sept. 25, 1973.

A. Duane Schwartz, Asst. U. S. Atty., W. D. Ky., Louisville, Ky., Lally Zimmerman, J. Vance Hughes, EPA, Region 4, Atlanta, Ga., for plaintiff.

Ralph Wible, Owensboro, Ky., for defendant.

## OPINION

JAMES F. GORDON, Chief Judge.

The defendant was charged under Section 311(b)(5) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1321(b)(5),[1] for failing to immediately notify an appropriate federal agency after gaining knowledge that it had discharged oil into a non-navigable stream. The case was submitted for a decision on the pleadings and upon a stipulation of facts.

■ In form of a motion to dismiss, defendant contended that Section 311 of the Act applies only to the classical "navigable waters of the United States," and, therefore, does not provide jurisdiction over discharges into "waters of the United States" as alleged in the information. That motion is denied.

To determine the clear meaning of the questioned criminal provision, one need go no further than the definitions provided in the Act. Congress defined "navigable waters" as "waters of the United States." [33 U.S.C. § 1362(7)]. To determine whether an oil discharge has entered waters regulated by Section 311 of the Act, a citizen simply inserts the statutory definition in place of the term "navigable waters." That navigable waters is sometimes followed by a prepositional phrase does not alter this

obvious result except perhaps to emphasize the inclusion of the waters of all the geographic areas listed in the definition of "United States." [Section 311(b)(5) of the Act; 33 U.S.C. Section 1321(b)(5)]. Thus, it is unnecessary to rely on the government's supplemental argument that well established judicial philosophy "forbids a narrow, cramped reading" of pollution legislation. United States v. Standard Oil Co., 384 U.S. 224, 226, 86 S.Ct. 1427, 16 L.Ed.2d 492 (1966); United States v. Republic Steel Corp., 362 U.S. 482, 491, 80 S.Ct. 884, 4 L.Ed. 2d 903 (1960).

■ This Court must deny the defendant's motion to suppress evidence obtained by the exploitation of the defendant's notification to the proper federal agency. In order for the evidence resulting from the notification to be excluded from consideration, the notice must be pursuant to this section of the act. In order to be pursuant to this section, the notice must be immediate. I find that the notification was not immediate and, therefore, was not received pursuant to Section 311(b)(5) of the act, 33 U.S.C. § 1321(b)(5). The Anna M. Fahy, 153 F. 866, 867 (2d Cir., 1907); United States v. Bouchard Transportation Co., Inc., 10 F.Supp. 283, 284 (D.C.N.Y.1934).

---

1. Section 311(b)(5) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1321(b)(5), reads as follows:

"(5) Any person in charge of a vessel or of an onshore facility or an offshore facility shall, as soon as he has knowledge of any discharge of oil or a hazardous substance from such vessel or facility in violation of paragraph (3) of this subsection, immediately notify the appropriate agency of the United States Government of such discharge. Any such person who fails to notify immediately such agency of such discharge shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both. Notification received pursuant to this paragraph or information obtained by the exploitation of such notification shall not be used against any such person in any criminal case, except a prosecution for perjury or for giving a false statement."

Section 311(b)(3) of the Act reads as follows:

"(3) The discharge of oil or hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone in harmful quantities as determined by the President under paragraph (4) of this subsection, is prohibited, except (A) in the case of such discharges of oil into the waters of the contiguous zone, where permitted under article IV of the International Convention for the Prevention of Pollution of the Sea by Oil, 1954, as amended, and (B) where permitted in quantities and at times and locations or under such circumstances or conditions as the President may, by regulation, determine not to be harmful. Any regulations issued under this subsection shall be consistent with maritime safety and with marine and navigation laws and regulations and applicable water quality standards."

Defendant moved for acquittal at conclusion of government's evidence because the stream is not "waters of the United States" since it is not navigable nor does it have a sufficient connection with interstate commerce for it to be regulated by the Federal government under the commerce clause of the Constitution.

Navigability is not an element of this offense as it is excluded from the Act by definition. 33 U.S.C. § 1362(7).

█ The facts before this Court clearly indicate that the discharge of pollutants to this stream, and the water quality of the stream itself, have a substantial effect upon and connection with interstate commerce. However, this Court is of the opinion that in prosecutions under this Act, the government is not required to establish the effect on interstate commerce of any particular discharge or of any particular stream. The legislative history of the Act[2] is laden with reports, references and statements supporting the widely accepted conclusion that water pollution is a national problem severely affecting the health of our people, the welfare of the nation and the efficient conduct of interstate commerce.

With knowledge of this problem firmly in mind, Congress legislated a regulatory scheme for *all waters* in the United States with its purpose stated as follows:

"Sec. 101.(a)

The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. In order to achieve this objective it is hereby declared that, consistent with the provisions of this Act—

(1) it is the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985;

(2) it is the national goal that wherever attainable, an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water be achieved by July 1, 1983;"

Section 101(a) of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251(a).

To accomplish those objectives Congress intends for this Act to apply to all waters:

"The conferees fully intend that the term navigable waters be given the broadest possible constitutional interpretation . . . ."[3]

█ That Congress may legislate a criminal provision that does not require the government to prove interstate commerce effects is well established. In *Wickard v. Filburn*, 317 U.S. 111, 63 S. Ct. 82, 87 L.Ed. 122 (1942), the Supreme Court held that once Congress has legislated to regulate an activity that exerts a substantial effect on interstate commerce, a violator of that law *may not* successfully assert that the effect of *his* activity is trivial, for "his contribution, taken together with that of many others similarly situated, is far from trivial." *Id.*, at 128, 63 S.Ct. at 90, see also, United States v. Darby, 312 U.S. 100, 123, 61 S.Ct. 451, 85 L.Ed. 609 (1941); United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726 (1942).

█ Moreover, Congressional attention to the effects of pollution on interstate commerce allows federal regulation of any activity within the class of pollution discharges or class of streams without regard to whether a particular discharge or stream has a discernable interstate effect. Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1970).

Therefore, defendant's motion for acquittal is denied and a verdict of guilty is hereby entered.

2. A Legislative History of the Water Pollution Control Act Amendments of 1972, Vol. 1 & 2; committee on Public Works, 93rd Congress, 1st Session, Serial No. 93–1, January, 1973.

3. House Report No. 92–1465, 92d Cong., 2d Sess. p. 144; Sen. Muskie's report to the Senate appearing in Cong. Rec., daily ed., Oct. 4, 1972, at S16876.