**UNITED STATES of America,**
**Plaintiff,**

**v.**

**GAF CORPORATION, Defendant.**
**Civ. A. No. 74-G-150.**

United States District Court,
S. D. Texas,
Galveston Division.
Feb. 5, 1975.

Robert Darden, Asst. U. S. Atty., and Richard Parker, Asst. U. S. Atty., Houston, Tex., for plaintiff.

F. Walter Conrad, Jr., Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM OPINION

NOEL, District Judge.

### A. PREFACE

This civil action was begun on September 6, 1974 when plaintiff United States of America applied to this Court for a temporary restraining order, and for temporary and permanent injunctive relief. The gist of plaintiff's complaint was that defendant GAF Corporation was in the process of drilling two deep wells for the subsurface disposal of organic chemical wastes by injection, without the approval of the Environmental Protection Agency. The extraordinary relief of a temporary restraining order was sought to prevent the drilling process from proceeding beyond the stage where geological samples of the substrata could be taken.

Upon request of the Court, all counsel promptly appeared for a conference in Chambers. By a telephone call to the drill site, counsel determined that appropriate core samples could be taken from the two wells. Thereupon, with the approval of the Court, the parties entered into a stipulation that no further drilling operations would be conducted at the site without the concurrence of plaintiff.[1]

With the case in this posture, numerous memoranda of agreement between the parties were entered into while discovery proceeded. The preservation of the status quo, achieved by the original stipulation and maintained by the memoranda of agreement, allowed the focus of the case to shift to plaintiff's request that the defendant be enjoined from using, as opposed to drilling, deep wells in contravention of the Federal Water Pollution Control Act (hereinafter called FWPCA), Chapter 26, 33 U.S.C. §§ 1251–1376.

---

[1]. Due to the urgency of the matter, the Court's approval of the stipulation between the parties was expressed without consideration of the jurisdictional issues discussed in the text, infra, and perforce did not manifest any conclusion whatsoever on those issues.

The FWPCA was amended in 1972 (see P.L. 92–500, § 2 [Oct. 18, 1972]) so that it is now, for all practical purposes, an entirely new Act. The Congressional declaration of goals and policy which introduces the new FWPCA, § 1251(a), states that, "[t]he objective of [the FWPCA] is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." This far-reaching objective is matched by the comprehensive provisions enacted to achieve it which, as will appear, are in issue here.

On October 22, 1974, defendant moved to dismiss this action for lack of jurisdiction over the subject matter under Fed.R.Civ.P. 12(b)(1), and for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[2] Controversies over discovery and other matters so occupied the attention of the Court and counsel, that attention to defendant's motion to dismiss was delayed. Plaintiff's response to the motion was not received until November 19, 1974. At a hearing on November 22, 1974, the Court requested additional briefing on the jurisdictional issue. On December 10, 1974, oral argument on defendant's motion was heard. On December 12, 1974, the Court requested comment from the parties on the relevance and impact of the recent case of Sierra Club v. Lynn, 502 F.2d 43 (5th Cir. 1974). On December 19, 1974 the Court orally announced its ruling that defendant's motion would be granted, and notified the parties that a full memorandum opinion would follow. This is that opinion.

## B. THE STATUTORY SCHEME [3]

Plaintiff's original complaint alleged jurisdiction solely under § 1319(b). Plaintiff's memorandum filed simultaneously with the complaint alleged that jurisdiction would "obtain" on a variety of grounds, no one of which was adequately explained. In defendant's brief accompanying its motion to dismiss, defendant challenged plaintiff's jurisdictional allegations. Plaintiff's brief in response effectively abandoned all jurisdictional grounds other than § 1319(b). Subsequently, in the memoranda requested by the Court on November 22, 1974 and December 12, 1974 and during oral argument on December 10, 1974, plaintiff failed to assert any basis for this Court's jurisdiction except § 1319(b). Accordingly, either this Court must have jurisdiction under § 1319(b) or defendant's motion to dismiss must be granted.

33 U.S.C. § 1319(b) provides:

The Administrator [of the Environmental Protection Agency] is authorized to commence a civil action for appropriate relief . . . for any violation for which he is authorized to issue a compliance order under subsection (a) of this section. Any action under this subsection may be brought in the district court of the United

2. The interweaving of the jurisdictional provisions of the FWPCA with the substantive portions of subchapter III of the Act, 33 U.S.C. §§ 1311–28, has the effect of equating, at least in this case, a failure to state a claim with a lack of subject matter jurisdiction. This merger of two distinct grounds for dismissal under Fed.R.Civ.P. 12(b) is not unique to the FWPCA. See this Court's opinion in Harkless v. Sweeny Independent School Dist., 388 F.Supp. 738 (S.D. Tex.1975). The immediate dependency of subject matter jurisdiction upon the validity of the claim was achieved in that part of § 1319(a)(3) which states that a civil action is allowed "[w]henever . . . the Administrator finds that any person is in violation" of several enumerated sections of the FWPCA. This language, by virtue of § 1319(b)—see discussion in text, infra—makes the ability of the Administrator to find a violation under the given facts crucial to the jurisdiction of the district courts. The inability of the Administrator to find a violation under the statute has two consequences: (a) the claim presented is invalid, and (b) there is no subject matter jurisdiction.

3. Consideration of the entire framework within which any particular statutory provision appears is always a wise step. This is particularly true when a new Act is confronted. Cf. Ethyl Corp. v. Environmental Protection Agency, No. 73–2205 (D.C.Cir. Jan. 28, 1975) [interpreting section 211(c)(1)(A) of the Clean Air Act, 42 U.S.C. § 1857f–6c(c)(1)(A)].

States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such action shall be given immediately to the appropriate State.

In conferring jurisdiction on the district courts, the second sentence of subsection (b) refers and applies only to a civil action embraced in the first sentence of subsection (b), which in turn refers only to a violation for which the Administrator is authorized to issue a compliance order pursuant to § 1319(a).

Subsection (a) of § 1319 authorizes in each of three separate paragraphs the issuance of a compliance order or the commencement of a civil action for appropriate relief for any violation pursuant to subsection (b). The first two of these paragraphs, §§ 1319(a)(1) and (2), concern ineffective enforcement by a State of limitations and conditions implementing certain sections of the FWPCA in discharge permits issued under State permit programs approved pursuant to § 1342. Neither of these paragraphs applies to the instant case.

Section 1319(a)(3) is the only provision which is relevant to this case. It provides:

> *Whenever* . . . the Administrator finds that *any person is in violation of section 1311, 1312, 1316, 1317, or 1318* of this title, *or is in violation of any permit condition or limitation* implementing any of such sections in a permit issued under section 1342 of this title . . ., he shall issue an order requiring such person to comply with such section or requirement, or he [*the Administrator*] *shall bring a civil action* in accordance with subsection (b) of this section. (emphasis added).

Plaintiff has not complained of a violation of "any permit condition or limitation" by defendant. Indeed, there is no allegation that the Administrator has found such a violation by defendant. This Court's jurisdiction depends, therefore, on whether the Administrator could have found that the defendant is "in violation of section 1311, 1312, 1316, 1317, or 1318" of Title 33.

Section 1311 contains six subsections, the first of which provides:

> (a) Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

Subsection 1311(a) expands the list of potentially relevant sections so that it includes, with § 1311(a), the following: §§ 1311(b)–(f), 1312, 1316, 1317, 1318, 1328, 1342, and 1344.

Subsections 1311(b)–(e) concern the establishment by the Administrator of certain effluent limitations. Subsection 1311(f) bans the discharge of radiological, chemical, and biological warfare agents and high-level radioactive waste. Section 1312 concerns the establishment by the Administrator of certain water quality related effluent limitations. Section 1316 concerns the establishment by the Administrator of certain standards of performance. Section 1317 concerns the establishment by the Administrator of certain effluent standards. Section 1318 concerns inspection, monitoring, and entry by the Administrator. Section 1328 concerns the approval by the Administrator of aquaculture projects. Section 1342 concerns the issuance by the Administrator or by the States of pollution discharge permits. Section 1344 concerns the issuance by the Secretary of the Army of permits for dredged or fill material.

Plaintiff has not alleged that defendant is or could be in violation within the meaning of § 1319(a)(3), of any section of the FWPCA mentioned in the preceding paragraph. Nor does plaintiff claim that defendant has failed to comply with any of them within the meaning of § 1311(a). Plaintiff contends, rather, that the proposed discharge of defend-

ant's pollutants [4] will be a violation of § 1311(a) *per se.*

There are two independent reasons, each of them entirely sufficient, why defendant could not be in violation of § 1311(a) when the chemical wastes in question are disposed of by injection into the two deep wells. These reasons will be discussed separately.

### C. NO "DISCHARGE OF A POLLUTANT"

The disposal of chemical wastes into underground waters [5] which have not been alleged to flow into or otherwise affect surface waters does not constitute a "discharge of a pollutant" within the meaning of § 1311(a).

Section 1362(12) defines "discharge of a pollutant" to mean, for our purposes, "any addition of any pollutant to navigable waters from any point source." The expression "navigable waters" is defined in § 1362(7) to mean "the waters of the United States, including the territorial seas." This definition effectively excludes from consideration any concept of navigability, in law or in fact. United States v. Holland, 373 F. Supp. 665 (M.D.Fla.1974); United States v. Ashland Oil & Transp. Co., 364 F.Supp. 349, 351 (W.D.Ken.1973), aff'd, 504 F.2d 1317 (6th Cir. 1974). Thus, it is clear that this statute is intended to have broad applicability. The question before the Court is whether, in its breadth, the FWPCA applies to subsur-

face wells. The legislative history shows conclusively that it does not.[6]

In speaking to this issue, Senate Report No. 92–414 on the bill which became the FWPCA states:

Several bills pending before the Committee provided authority to establish Federally approved standards for groundwaters which permeate rock, soil, and other subsurface formations. Because the jurisdiction regarding groundwaters is so complex and varied from State to State, the Committee did not adopt this recommendation.

U.S.Code Cong. & Admin.News (1972) p. 3739. This statement reflects the present regulation of subsurface discharges by state agencies such as the Texas Water Quality Board, from which defendant has secured a permit to engage in the disposal here challenged.

This unequivocal recital in the Senate Report that the regulation of subsurface discharges is not within the enforcement purview of the Act was confirmed when an amendment was proposed during floor debate on the House bill, H.R. 11896, which preceded the FWPCA. The amendment in question was introduced by Congressman Aspin who proposed to fill in the void created by the lack of enforcement power over ground waters. 118 Cong.Rec. 10,666 (1972). The amendment was, however, rejected on March 28, 1972 by a vote of

---

4. There is no dispute that the material defendant proposes to dispose of by injection into the wells in question constitutes a pollutant within the meaning of the FWPCA. The term "pollutant" is defined in § 1362(6) to mean, inter alia, "chemical wastes".

5. The text refers to the subsurface material into which defendant proposes to inject the organic chemical wastes at issue as underground waters. In fact, no presentation has been made to the Court on the nature of the strata into which the wells in question exit. At oral argument on defendant's motion to dismiss, the Court explicitly asked both parties if an evidentiary hearing was necessary to supplement the pleadings as to any fac-

tual matters. Each party declared that no relevant evidence was missing and thus no evidence was received on this score.

6. Sierra Club v. Lynn, 502 F.2d 43 (5th Cir. 1974) is not to the contrary. In response to a request by the Court for comment on the applicability of the *Lynn* case to the instant controversy, both plaintiff and defendant agreed that the case was not directly relevant. The Court notes that the subsurface strata allegedly jeopardized in *Lynn* contained the water supply for the San Antonio, Texas metropolitan area. *Lynn,* supra, 502 F.2d at 48. Thus, the facts alleged in this case are not remotely similar in this crucial aspect to those in *Lynn.*

**1384**

86 to 34. 118 Cong.Rec. 10,669 (1972).[7] The failure of the proposed amendment "strongly militates against a judgment that Congress intended a result that it expressly declined to enact." Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). This Court has neither the authority nor the inclination to act where the Congress has conferred no jurisdiction.

Plaintiff has invited the Court to follow several indirect routes to arrive at a conclusion contrary to that to which the straight path of legislative history leads. Plaintiff points particularly to the following two provisions of the FWPCA:

> 1) 33 U.S.C. § 1362(14) which defines the term "point source" to mean "any discernible, confined and discrete conveyance, including but not limited to any . . . *well.* . . ." (emphasis added).

> 2) 33 U.S.C. § 1362(6) which excludes from the definition of the term "pollutant" certain injection discharges made in connection with the production of oil and gas.

These two provisions are the bases of arguments by plaintiff which are similar in form. Plaintiff contends that the inclusion of wells in the definition of a point source is unnecessary if this Court's conclusion stated above is correct. Plaintiff also contends that the exclusion of oil and gas injection discharges from the definition of pollutants is similarly unnecessary if this Court is right.

These contentions cannot be accepted. Plaintiff calls upon the Court to rely upon speculation as to what Congress might have meant when the legislative history is boldly conclusive as to what Congress must have meant. The Court notes that the definitional section of the FWPCA, in which the two provisions referred to above are found, applies to all of Chapter 26 of Title 33 (i. e., to the entire FWPCA)· and not just to the Act's third subchapter, which concerns standards and enforcement. It is at least plausible that Congress intended to include within the scope of research under Subchapter I of the Act (33 U.S.C. §§ 1251–65) and of the permit programs, especially those of the States,[8] under Subchapter IV (33 U.S.C. §§ 1341–45) that which was excluded from the enforcement provisions of Subchapter III (33 U.S.C. §§ 1311–28).

Plaintiff makes one final attempt to build a jurisdictional back-door for itself. Section 1342(a)(3) provides:

> The permit program of the Administrator under paragraph (1) of this subsection, and permits issued thereunder, shall be subject to the same terms, conditions, and requirements as apply to a State permit program and permits issued thereunder under subsection (b) of this section.

Plaintiff asks this Court to apply this paragraph in the light of that part of § 1342(b) which reads:

> . . . The Administrator shall approve each [proposed State] program unless he determines that adequate authority does not exist:
>
> (1) To issue permits which—
>
> . . . . . . .
>
> (D) control the disposal of pollutants into wells.[9]

From these provisions in the FWPCA, plaintiff would have the Court conclude that the authority to control disposal wells is a necessary condition of the federal National Pollution Discharge Elimination System (NPDES) permit program. Once more plaintiff seeks to counter with speculation the irrebuttable

---

7. Reference to the floor debate cited in the text reveals the stress placed by the House members on the existing state regulation of pollution of underground waters.

8. See text accompanying note 9, infra.

9. The provision quoted in the text is an excellent example of the point made in the text accompanying note 8, supra. If Congress had not included injection wells within the definitions in § 1362, the criteria for state programs to be approved would arguably not have included regulation of such wells.

language and unambiguous action found in the legislative history. Suffice it to say that Congress could not possibly have meant to achieve in roundabout fashion what it expressly declined to accomplish straightforwardly.

Therefore, defendant does not threaten to discharge a pollutant within the meaning of § 1311(a). Defendant's motion to dismiss must accordingly be granted. As noted above, there is an alternative ground to support the Court's decision to dismiss.

### D. NO "VIOLATION"

Even if defendant's proposed injection disposal would constitute a "discharge of a pollutant" within the meaning of § 1311(a), defendant will not be "in violation of" any applicable provision within the meaning of § 1319(a)(3). This is a second reason, independent of that already described and sufficient by itself, why this complaint must be dismissed for lack of subject matter jurisdiction.

The conclusions reached in Part B, supra, bear repeating here. Jurisdiction of civil actions brought by the government to enforce the FWPCA is conferred on the district courts in § 1319(b). That subsection refers to § 1319(a), paragraph (3) of which is relevant to this case. Section 1319(a)(3) allows for civil actions whenever the Administrator finds a violation of §§ 1311, 1312, 1316, 1317, or 1318, or of a § 1342 permit condition.

Subsection 1311(a), which is fully set out above, is the crucial provision from the point of view of plaintiff. Plaintiff earnestly contends that any discharge of a pollutant, regardless of its nature, extent or effect, is absolutely forbidden until a permit for the same is acquired.[10] Plaintiff interprets the "[e]xcept as in compliance with" language of § 1311(a) to create a burden on every person and enterprise in the country to affirmatively comply with one of the enumerated sections before discharging any pollutant.

While not absurd on its face, this interpretation of the statute must be examined in light of the fact that the effluent limitations under § 1312 [11] which might be applicable to defendant's or-

---

10. Plaintiff's interpretation was perhaps inspired by the opinions in United States v. Pennsylvania Chem. Corp., 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973) and United States v. Holland, 373 F.Supp. 665 (M. D.Fla.1974).

In the *Pennsylvania Chem.* case, the Supreme Court held that the failure of the Secretary of the Army to promulgate a formal regulatory-permit program was no bar to the prosecution of a discharger of industrial refuse under § 13 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 407. The absence of a permit program made it impossible for the defendant in that case to secure a permit and to avoid prosecution thereby. Consequently, the discharge without a permit was a *per se* violation. But *Pennsylvania Chem.* interpreted a different statute from the one now before this Court. Section 407 of Title 33 contains significantly different language which supports the *per se* interpretation.

In the *Holland* case, the very able District Judge considered at length the proper interpretation under the FWPCA of "navigable waters" but gave no consideration at all to the issue this Court now confronts. The assumption in *Holland* that § 1311(a) renders all non-permitted discharges unlawful without regard to the rest of the FWPCA was apparently not challenged. It should be noted that *Holland*, like *Pennsylvania Chem.*, grew out of a complaint under § 407. See 373 F.Supp. at 667, 676.

11. Section 1312 is cited in the text as the statutory authority for the establishment of water quality related effluent limitations. As indicated in Part B in the text, supra, various other provisions of the FWPCA authorize the establishment of different limitations and standards. Cf. §§ 1311(b)–(e), 1316, and 1317. The parties have not addressed the question of the proper source or sources in the statute for regulation of defendant's discharges. Under the circumstances, the Court does not feel called upon to speculate on this question. So far as the pleadings show, none of the potentially applicable limitations or standards have been established. Section 1312 will be cited in the text as proxy for all the relevant sections. Similarly, effluent limitations will be used in the text as a shorthand reference to all the limitations and standards which may be established.

ganic chemical wastes have not as yet been established. Nor has defendant's application for a permit under § 1342 been acted upon.

Plaintiff's proposed construction of § 1311(a) leads to an intolerable outcome. For all practical purposes, plaintiff maintains that the present failure of the Administrator to establish effluent limitations means that defendant cannot discharge any waste at all. Plaintiff's answer to defendant's dilemma is that a permit should be obtained under § 1342. While defendant's permit application is pending, plaintiff contends, no discharge at all is permissible. The absence of any indication in the language of the FWPCA that this drastic consequence of the Administrator's inaction is proper, convinces this Court that a more reasonable conclusion was intended. The general tone of the legislative history (which is curiously incomplete on this score) affirms this conviction. Cf. U.S. Code Cong. & Admin.News (1972) pp. 3668–3834; Congressional Record, Vol. 118, for March 28, 1972.

■ Much more consistent with the statutory scheme is the conclusion that § 1311(a), as well as § 1319(a)(3), require the government to demonstrate that a defendant has actually failed to comply with one of the relevant provisions of the FWPCA. After effluent limitations applicable to defendant are established, defendant must honor them as the law. Otherwise, defendant would not be "in compliance" with the section under which the effluent limitations were issued.

As the Court in Comm. for Consideration of Jones Falls Sewage Sys. v. Train, 375 F.Supp. 1148 (D.Md.1974) pointed out in applying § 1318, a statute which directs the Administrator to do something cannot, strictly speaking, be violated by anyone but the Administrator. It is only when the Administrator establishes effluent limitations under §

1312 that it becomes possible to violate the limitations and, with them, the section under which they were issued. For the time being, the Administrator's failure to establish effluent limitations denies defendant the opportunity to comply with them within the meaning of § 1311(a).

Plaintiff's proffered interpretation of the statute flies in the face of § 1319(a)(3), which allows civil actions to arrest violations either of § 1312 and other sections, or of a permit condition or limitation. This is consistent with § 1342(k), which specifies that a permit relieves its holder from suit under section 1312. But under plaintiff's theory, one without a permit cannot discharge at all, regardless of compliance with § 1312. If this were the intended result, why did Congress provide for civil actions to prevent violations of § 1312? If plaintiff is correct, compliance *vel non* with § 1312 is irrelevant to one without a permit because of § 1311(a) and is irrelevant to one with a permit because of § 1342(k).

■ The answer must be that compliance with § 1312 is relevant; that defendant can either,

(1) avoid a violation of § 1312 by never contravening the effluent limitations to be established thereunder by the Administrator of the Environmental Protection Agency, or

(2) comply with the conditions and limitations contained in a § 1342 permit.[12]

To date defendant has succeeded in accomplishing (1) above by virtue of the Administrator's failure to carry out the duty imposed upon him by § 1312 to establish effluent limitations.

This interpretation of the statute finds support in the opinion in Natural Resources Defense Council v. Train, 510 F.2d 692 at 706 (D.C.Cir.1974), where

---

12. The Court of Appeals for this Circuit apparently acknowledged the validity of this conclusion in Sierra Club v. Lynn, supra 502 F.2d at 63, where it was said: "The Act provides for federal and state enforcement of effluent limitations to be prescribed and of a discharge permit system."

a comprehensive statement of the statutory scheme was undertaken. In that case, the Court apparently viewed the various limitations and guidelines of § 1312 and other similar provisions as means of insuring uniformity among various permit authorities. NRDC v. Train, supra, 510 F.2d at 707. This limited interpretation of the role of effluent limitations in the enforcement of the FWPCA does not seem consistent with the statutory scheme and was, in any event, so declared by dictum.

The portion of the opinion in NRDC v. Train which is highly relevant here is found at 707. Plaintiff has stressed the declaration by that Court that, "[a]fter December 31, 1974 . . . persons discharging pollutants must have obtained a permit in order to have a legal defense against prosecution." [13] On its face, this statement supports plaintiff's interpretation of the statute. But this statement was followed immediately by this observation:

Obviously, Congress contemplated that the task of evaluating permit applications and issuing permits would be completed by that date.

The Court in NRDC v. Train was not called upon to note what this Court must —that Congress also contemplated the timely establishment of effluent limitations. The tardiness of the Administrator in carrying out his duties under § 1314 which is well documented in NRDC v. Train has apparently extended to the Administrator's duties under the other statutory sections, including § 1312. The failure of the Administrator has the effect of allowing, for the time being, the defendant to discharge the wastes in question without the effective federal [14]

regulation Congress sought to achieve with the FWPCA.

Plaintiff has sought to avoid the legal consequences of the Administrator's dalliance by proposing the *per se* interpretation of § 1311(a) described above. The second alternative ground for this Court's decision—that plaintiff has shown no "violation" within the meaning of § 1319(a)(3)—does not weaken the FWPCA one iota. All that this decision denies to the Administrator of the Environmental Protection Agency is the freedom to restructure the FWPCA to cover what would appear to be his procrastination.

## E. SUMMARY

As noted above, defendant's motion to dismiss alleged both a lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and a failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6). The substantive implications of the decision this Court was required to make draw attention to the principle that a "narrow, cramped" reading of water pollution legislation is inappropriate. United States v. Pennsylvania Chem. Corp., 411 U.S. 655, 670, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). However, the Court notes that the jurisdictional implications of the decision reached here call for deference to a policy which applies in pollution cases as well as in others; that "[f]ederal jurisdictional statutes are to be strictly, not expansively, construed." United States v. Armco Steel Corp., 333 F.Supp. 1073, 1079 (S.D.Tex.1971). On balance, it has not been necessary to weight the scales in favor of either party to this action. The intent of the Congress has been

---

13. The December 31, 1974 date in the quoted statement is drawn from § 1342(k) which provides a temporary immunity to permit applicants. "Where an NPDES [National Pollution Discharge Elimination System] permit has been applied for but no final administrative disposition has been made, subsection 402(k) [§ 1342(k)] provides that, until December 31, 1974, the discharge in question

shall not be a violation of either the amended FWPCA or the Refuse Act [33 U.S.C. § 407 et seq.] . . . ." United States v. Rohm & Haas Co., 500 F.2d 167, 170 (5th Cir. 1974), petition for cert. docketed, 43 U.S.L.W. 3331 (U.S.Nov. 27, 1974).

14. As noted in the text at p. 1383, defendant's injection disposal wells are regulated by the Texas Water Quality Board.

clear enough that guesswork has been left behind.

Accordingly, defendant's motion to dismiss must be granted because defendant does not threaten either to discharge a pollutant under § 1311(a) or to commit a violation under § 1319(a)(3).

The Clerk shall file this Memorandum Opinion and send a copy to all counsel.