**UNITED STATES of America and State of Arkansas, Plaintiffs**

**v.**

**EXXONMOBIL PIPELINE COMPANY and Mobil Pipe Line Company, Defendants.**

**Case No. 4:13–cv–00355 KGB.**

United States District Court, E.D. Arkansas, Western Division.

Signed June 9, 2014.

Christopher Robert Thyer, Richard M. Pence, Jr., U.S. Attorney's Office, Dustin Blake McDaniel, Kendra Akin Jones, Eric Barkley Estes, Jamie L. Ewing, Patrick E. Hollingsworth, Arkansas Attorney General's Office, Little Rock, AR, Edwin Quinones, U.S. Environmental Protection Agency, Dallas, TX, Emily C. Powers, Jason T. Barbeau, Robert G. Dreher, Robyn E. Hanson, U.S. Department of Justice, Washington, DC, for Plaintiffs.

Roger R. Martella, Jr., Timothy K. Webster, Sidley Austin LLP, Washington, DC, Justin T. Allen, N.M. Norton, Jr., Stephen R. Lancaster, Wright, Lindsey & Jennings, Little Rock, AR, for Defendants.

## ORDER

KRISTINE G. BAKER, District Judge.

Before the Court is defendants Exxonmobil Pipeline Company's and Mobil Pipe Line Company's motion to dismiss (Dkt. No. 5). The United States of America and the State of Arkansas have responded in opposition (Dkt. Nos. 17, 19), and defendants have replied (Dkt. No. 21). Defendants seek to dismiss the complaint against them pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

### I. Factual Background

The United States and the State of Arkansas assert claims against defendants arising out of the March 29, 2013, oil spill from the Pegasus Pipeline rupture in Mayflower, Arkansas. The Pegasus Pipeline is

owned by separate defendant Mobil Pipe Line Company and operated by separate defendant Exxonmobil Pipeline Company. The United States and the State of Arkansas claim the oil spill caused an evacuation of approximately 22 homes resulting from the hazardous conditions of the spill and that the oil flowed through that residential neighborhood into nearby waterways, including an unnamed creek, wetlands, and Lake Conway, a 6,700–acre lake that flows to the Arkansas River. The United States and the State claim that, as of the filing of the complaint, oil from that spill has contaminated land and waterways and impacted human health and welfare, wildlife, and habitat and claim that cleanup efforts remain ongoing.

The United States and the State of Arkansas assert the spilled oil caused, *inter alia*, a film or sheen upon or discoloration of the surface of the water and adjoining shorelines and caused deposition beneath the surface of the water or upon adjoining shorelines. The United States and State of Arkansas allege that, as of the filing of the complaint, petroleum was still present in portions of the impacted area and continued to impact negatively existing instream water uses; did not meet the level of water quality necessary to protect the existing uses; increased the true color of the waters of the state; resulted in offensive odors arising from the waters of the state and interfered with the reasonable use of water; introduced toxic substances into waters of the state at levels above acceptable human health and aquatic life criteria; produced globules, residue, film, and/or sheen on the surface or banks; has caused a visible increase in the turbidity of waters of the state; impacted the pH of waters of the state and caused it to fluctuate in excess of 1.0 unit over a 24–hour period; and caused dissolved oxygen levels in the waters of the State to decrease

below the set standards that must be met to protect aquatic life.

The United States and the State also allege that the air pollution caused by the release of petroleum has unreasonably interfered with the Mayflower residents' enjoyment of life and use of their property and the surrounding area, including causing the evacuation of homes in the residential neighborhood.

Finally, the United States and the State of Arkansas allege defendants have stored petroleum-contaminated waste at 322 Highway 26, Conway, Arkansas ("Highway 36 site") and that the waste of this site contains soils, oily debris, wood chips, hydrovac mud, concrete and asphalt, and oil/water mixture waste. The United States and the State complain that the Arkansas Department of Environmental Quality ("ADEQ") notified defendants on May 1, 2013, that the Highway 36 site waste removal was to be completed within seven days, that defendants failed to remove the waste by May 8, 2013, and that, as of the time of the complaint, waste was still present on the site.

As the first cause of action in the complaint, plaintiffs seek civil penalties for alleged violations of Section 311(b) of the Clean Water Act ("CWA"), 33 U.S.C. § 1321(b). Section 311(b)(3), of the CWA prohibits the "discharge of oil or any hazardous substances into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone ... in such quantities as may be harmful as determined by [federal regulation]." 33 U.S.C. § 1321(b)(3). Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), subjects "[a]ny person who is the owner, operator, or person in charge of any ... onshore facility ... from which oil ... is discharged in violation of paragraph (3) ... to a civil penalty...." That civil penalty increases pursuant to

Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D), if the violation is the result of "gross negligence or willful misconduct."

As the second cause of action in the complaint, plaintiffs seek injunctive relief pursuant to section 309(b) of the CWA, 33 U.S.C. § 1319(b). Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes unlawful "the discharge of any pollutant by any person." Section 309(b) of the CWA, 33 U.S.C. § 1319(b), the enforcement provision for section 301, authorizes civil actions for "appropriate relief, including a permanent or temporary injunction."

As the third cause of action in the complaint, plaintiffs allege violations of the Arkansas Hazardous Waste Management Act of 1979 ("HWMA"), Ark.Code Ann. § 8–7–201 et seq. The HWMA and Arkansas Pollution Control and Ecology Commission ("APC & EC") Regulation 23 set forth the state regulatory program governing the generation, storage, transportation, treatment, and disposal of hazardous wastes. Ark.Code Ann. § 8–7–205(4) provides that it is unlawful for any person to:

> Store, collect, transport, treat, or dispose of any hazardous waste contrary to the rules, regulations, permits, or orders issued under this subchapter or in such a manner or place as to create or as is likely to be created a public nuisance or a public health hazard or to cause or is likely to cause water or air pollution within the meaning of the Arkansas Water and Air Pollution Control Act, § 8–4–101 et seq.

Alleging that the term "hazardous waste" includes petroleum-contaminated wastes, plaintiffs allege that defendants are persons who have stored, transported, and disposed of hazardous waste contrary to the rules, regulations, permits, or orders issued under the HWMA or in such a manner or place as to create or as is likely

to be created a public nuisance or a public health hazard within the meaning of the Arkansas Water and Air Pollution Control Act. Ark.Code Ann. § 8–7–204(b)(4) provides for civil penalties for violations of the HWMA and of any rules, regulations, permits, or plans issued pursuant to the HWMA.

As the fourth cause of action, plaintiffs allege violations of the Arkansas Water and Air Pollution Control Act, Ark.Code Ann. § 8–4–101 et seq., with respect to the protection of water quality. The Arkansas Water and Air Pollution Control Act and APC & EC Regulation 2 set forth the state regulatory program governing the protection of water quality. Ark.Code Ann. § 8–4–217(a)(1) makes it unlawful to cause pollution of any of the waters of the state. Plaintiffs allege that defendants caused pollution as defined by Ark.Code Ann. § 8–4–102(6):

> "Pollution" means such contamination or other alteration of the physical, chemical, or biological properties of any waters of the state, or such discharge of any liquid, gaseous, or solid substance in any waters of the state as will, or is likely to, render the waters harmful, detrimental, or injurious to public health, safety, or welfare; to domestic, commercial, industrial, agricultural, recreational, or other legitimate beneficial uses; or to livestock, wild animals, birds, fish, or other aquatic life.

As part of the fourth cause of action, plaintiffs also allege various violations contained in APC & EC Regulation 2 which establishes water quality standards for the surface waters of the state, including the following regulations: APC & EC Regulation 2.201 which requires that existing instream water uses and the level of water quality necessary to protect the existing uses be maintained and protected; APC & EC Regulation 2.406 which prohibits that

the true color of the waters to be increased to the extent that it interferes with present or projected future uses of the waters; APC & EC Regulation 2.407 which limits taste- and odor-producing substances in receiving waters to concentrations that will not interfere with the production of potable water by reasonable water treatment processes, impart unpalatable flavor to food or fish, result in offensive odors arising from the waters, or otherwise interfere with the reasonable use of the water; APC & EC Regulation 2.409 which provides that discharges shall not be allowed into any waterbody which, after consideration of the zone of initial dilution, the mixing zone, and critical flow conditions, will cause toxicity to human, animal, plant, or aquatic life or interfere with normal propagation, growth, and survival of aquatic biota; APC & EC Regulation 2.410 which provides that oil, grease, and petrochemical substances shall not be present in receiving waters to the extent they produce globules or other residue, any visible, colored film on the surface, coat the banks or bottoms of the waterbody, or adversely affect any of the associated biota; APC & EC Regulation 2.503 which prohibits a distinctly visible increase in turbidity of receiving waters attributable to discharges or instream activities; APC & EC Regulation 2.504 which provides that as a result of waste discharges the pH of water in streams or lakes must not fluctuate in excess of 1.0 unit over a period of 24 hours and pH values in lakes at 1.0 meter depth and streams shall not be below 6.0 or above 9.0; APC & EC Regulation 2.505 which provides that dissolved oxygen in lakes and reservoirs at 1.0 meter depth shall not exceed 5 mg/L unless otherwise permitted by the APC & EC; APC & EC Regulation 2.508 which prohibits toxic substances in receiving waters, after mixing, in such quantities as to be toxic to human, animal, plant, or aquatic life or to interfere with the normal propagation, growth, and survival of the indigenous aquatic biota; and APC & EC Regulation 2.510 which prohibits oil, grease, or petrochemical substances from being present in receiving waters to the extent they produce globules or other residue, any visible, colored film on the surface, coat the banks or bottoms of watercourses, or adversely affect any of the associated biota.

As the fifth cause of action, plaintiffs allege violations of the Arkansas Water and Air Pollution Control Act, Ark.Code Ann. § 8–4–101 *et seq.*, with respect to the protection of air quality. The Arkansas Water and Air Pollution Control Act and APC & EC Regulation 18 set forth the state regulatory program governing the protection of air quality. Ark.Code Ann. § 8–4–310(a)(3) makes it unlawful to violate any rule, regulation, or order of the APC & EC issued pursuant to the Arkansas Water and Air Pollution Control Act. APC & EC Regulation 18.801 prohibits the emission of air contaminants, including odors or water vapor and including an air contaminant whose emission is not otherwise prohibited if the emission constitutes air pollution. "Air pollution" is defined by Ark.Code Ann. § 8–4–303(5) and APC & EC Regulation 18.2 as:

> [T]he presence in the outdoor atmosphere of one (1) or more air contaminants in quantities, of characteristics, and of a duration that are materially injurious or can be reasonably expected to become materially injurious to human, plant, or animal life or to property, or that unreasonably interfere with enjoyment of life or use of property throughout the state or throughout the area of the state as shall be affected thereby.

"Air contaminant" is defined by Ark.Code Ann. § 8–4–303(2) and APC & EC Regulation 18.2 as "any solid, liquid, gas, or vapor

or any combination thereof." Ark.Code Ann. § 8–4–103(b)(4) provides for civil penalties per day for violations of the Arkansas Water and Air Pollution Control Act and any rules, regulations, permits, or plans issued pursuant thereto.

All parties have stipulated to the dismissal without prejudice of the sixth cause of action of the complaint in which plaintiffs sought a declaratory judgment on liability for removal costs and damages under the Oil Pollution Act ("OPA") and the Declaratory Judgment Act (Dkt. No. 16). This Court has acknowledged this claim as dismissed (Dkt. No. 18).

## II. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must satisfy the pleading requirement of Rule 8(c)(2), which requires that a complaint present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2); *see Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009). Specific facts are not required; the complaint must simply " 'give the defendant fair notice of what … the claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhance-ment.' " *Id.* (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' " *Braden,* 588 F.3d at 594 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937). "The plausibility standard is not a probability requirement. Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* (internal quotations omitted).

### A. The Clean Water Act Claims

#### 1. Civil Penalties Under the Clean Water Act

##### a. "Navigable Waters of the United States"

Defendants first argue that the complaint fails to state a claim for civil penalties under the Clean Water Act Section 311(b) because Section 311(b)(3)'s prohibition of the discharge of oil "into or upon the navigable waters of the United States" prohibits the discharge of oil into waters of the United States which are navigable in fact, not all waters of the United States, as contemplated in other sections of the CWA and by plaintiffs in the complaint. Defendants argue that, because plaintiffs have not argued that the unnamed creek, wetlands, or Lake Conway is navigable in fact, plaintiffs fail to state a claim upon which relief can be granted.

Neither "navigable waters" nor "navigable waters of the United States" are defined in Section 311. However, the term "navigable waters" is explicitly defined in Section 502(7) of the CWA for purposes of the Act, "[e]xcept as otherwise specifically

provided," to mean "the waters of the United States." 33 U.S.C.A. § 1362(7). Defendants argue that Section 311 has a more narrow jurisdictional scope than other provisions of the CWA. Defendants therefore attempt to distinguish the definition in Section 502(7) because the term "navigable waters" has a more narrow scope than "navigable waters of the United States" and claim these terms are separate terms of art. The United States argues that the statute defines "navigable waters" on its face, with no narrowing provision in Section 311. The United States also maintains that the terms "navigable waters" and "navigable waters of the United States" are used interchangeably throughout the CWA. Both parties cite to legislative history in support of their arguments.

Defendants further argue that "navigable waters," defined as "the waters of the United States," cannot mean "navigable waters of the United States" because it would lead to unacceptable surplusage, citing by way of example "the waters of the United States of the United States." Therefore, defendants argue, "navigable waters of the United States" should be given its plain meaning—navigable in fact—because Congress left it undefined.

■ The Court is satisfied that the CWA's definition of "navigable waters," not otherwise specifically provided in Section 311, controls the term "navigable waters" in Section 311 of the CWA because "[a]ny other reading would violate the specific language of the definition ... and turn a great legislative enactment into a meaningless jumble of words." *United States v. Ashland Oil & Transp. Co.,* 504 F.2d 1317, 1324–25 (6th Cir.1974) (citing *United States v. Ashland Oil & Transp. Co.,* 364 F.Supp. 349, 350 (W.D.Ky.1973)) (finding the definition of "navigable waters" in Section 502 controlling on Section 311 of the CWA based on the clear lan-

guage of the statute, legislative history which reveals the CWA was intended to be broadly construed, and finding no merit to the additional prepositional phrase surplusage argument); *see also United States ex rel. California Dep't of Fish & Game v. HVI Cat Canyon, Inc.,* 2013 WL 169877, *2 (C.D.Cal. Jan. 16, 2013), *reconsideration denied,* 2013 WL 173476 (C.D.Cal. Jan. 16, 2013) (finding the definition of "navigable waters" in Section 502 controlling on Section 311 of the CWA based largely on the reasoning in *Ashland Oil* ). Given that this Court interprets "navigable waters of the United States" to mean "waters of the United States" consistent with Section 502 of the CWA, and given that defendants have not disputed that the waters named in the complaint are waters of the United States (Dkt. No. 21, at 2 n. 2), the Court is also satisfied that plaintiffs' complaint sufficiently alleges that defendants violated Section 311 of the CWA by discharging oil into or upon the waters of the United States.

■ Defendants also argue in footnotes that the Court should dismiss this count of the complaint for lack of subject matter jurisdiction (Dkt. No. 6 at 5 n. 4) and for failure to state a claim on the grounds that the allegations are no more than a conclusory recitation of the statutory criteria (*Id.* at 10 n. 10). Neither of these arguments is availing. Defendants argue that discharge into navigable in fact waters is not only an element of the claim but also the basis for this Court's jurisdiction over the claim. This Court disagrees. "[T]he definition of 'navigable waters' in the CWA does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *United States v. Sea Bay Dev. Corp.,* 2007 WL 1169188, *5 (E.D.Va. Apr. 18, 2007) (internal quotations omitted). This Court also finds that plaintiffs have alleged sufficiently facts which, if

proven, would permit recovery of civil penalties under the CWA.

### b. Gross Negligence or Willful Misconduct

■ Turning to defendants' next CWA argument, defendants argue that plaintiffs have not offered facts to suggest that the violation was plausibly the result of defendants' gross negligence or willful misconduct. The complaint states that civil penalties can be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation is the result of "gross negligence or willful misconduct." Defendants argue that the complaint fails to state any facts to support this theory of enhanced liability and that any claim for these enhanced penalties should therefore be dismissed for failure to state a claim. The United States responds that "gross negligence or willful misconduct" is not a separate claim in the complaint or a required element of a Section 311(b)(3) claim but instead represents degrees of culpability which, if established at trial, the Court will consider when assessing the appropriate penalties. The Court agrees. Section 311(b)(7) of the CWA states: "In any case in which a violation of paragraph (3) was the result of gross negligence or willful misconduct ... the person shall be subject to a civil penalty of not less than $100,000, and not more than $3,000 per barrel of oil ... discharged." 33 U.S.C § 1321(b)(7). The United States contends that the civil penalty amount for gross negligence or willful misconduct per barrel has been increased to $4,300 by the Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. § 19.4. Regardless, the Court determines from the structure and language of the statute that gross· negligence and willful misconduct are not separate causes of action or elements that must be alleged in the complaint but instead are degrees of culpability which, if established at trial, the Court will consider when assessing the appropriate penalties.

### 2. Injunctive Relief Under the Clean Water Act

Turning to defendants' final CWA argument, defendants argue that the complaint fails to state a claim for injunctive relief under CWA Section 309(b), 33 U.S.C § 1319(b). Defendants argue that plaintiffs have failed to plead sufficient facts to establish the need for an injunction, including irreparable injury and facts alleging ongoing conduct or harm that must be enjoined. The United States responds that the scope of injunctive relief measures is a matter to be determined by the Court after trial, not at this early stage of this action, and that, regardless, the complaint provides clear bases for finding irreparable injury and ongoing harm.

Section 309(b) of the CWA provides the Court jurisdiction to order "appropriate relief, including a permanent or temporary injunction, for any violation of," *inter alia,* 33 U.S.C § 1311. 33 U.S.C § 1319(b). Section 301(a) of the CWA, 33 U.S.C § 1311(a), prohibits "the discharge of any pollutant by any person" except in compliance with the CWA. The United States alleges ·that defendants violated 33 U.S.C § 1311 and that defendants have not disputed this. Additionally, defendants "have cited no cases that suggest that dismissal of claims for injunctive relief is appropriate at the Rule 12(b)(6) stage." *SEC v. Jackson,* 908 F.Supp.2d 834, 874 (S.D.Tex. 2012) (quoting *SEC v. Gabelli,* 653 F.3d 49, 61 (2d Cir.2011), *rev'd on other grounds,* — U.S. —, 133 S.Ct. 1216, 185 L.Ed.2d 297 (2013)) ("[I]t is most unusual to dismiss a prayer for injunctive relief at this preliminary stage of the litigation, since determining the likelihood of future violations is almost always a fact-specific inquiry.").

■ The Court finds plaintiffs have sufficiently pleaded a claim for injunctive relief pursuant to Section 309(b) of the CWA for alleged violations of Section 301(a) so as to satisfy pleading requirements at the motion to dismiss stage. The Court will not at this stage dismiss injunctive relief as a possible relief measure the Court may later see fit to impose for any proven violations of the CWA.

## B. Arkansas State Law Claims

### 1. Hazardous Waste Claim

With regard to plaintiffs' state law claims, defendants first dispute that plaintiffs failed to provide factual support for their claim under the Hazardous Waste Management Act. Defendants claim that plaintiffs merely recited provisions of the HWMA and a paragraph of legal conclusions but allege no facts to support their allegation that defendants improperly stored, transported, or disposed of the recovered oil that spilled from the pipeline; no facts to support their allegation that defendants' storage, transportation, or disposal of the oil violated the relevant statutes and regulations; and no factual allegations to suggest that the recovered oil is a "hazardous waste."

■ The State of Arkansas responds that the complaint sufficiently describes defendants' alleged storage of petroleum-contaminated waste at an unpermitted location, which the HWMA prohibits, and defendants' conduct in purportedly continuing to store the waste at the unpermitted site after being directed by the ADEQ to remove it (*See* Dkt. No. 1, ¶¶ 18–21). The State contends these allegations sufficiently state a claim upon which relief can be granted that defendants improperly stored oil-contaminated waste in violation of the relevant statutes and regulations. This Court agrees. Plaintiffs' complaint alleges with sufficient specificity their HWMA claims.

■ With regard to defendants' contention that plaintiffs did not sufficiently allege that oil is a "hazardous waste," the State responds that the complaint's allegations that defendants "stored petroleum-contaminated waste," including "soils, oily debris, wood chips, hydrovac mud, concrete and asphalt, and oil/water mixture wastes," in conjunction with allegations regarding ADEQ's request for its removal from the Highway 36 site, and plaintiffs' citation of the statutory definition of hazardous waste in the complaint ("any waste or combination of wastes ... which ... may in the judgment of ADEQ ... pose a substantial present or potential hazard to human health or the environment when improperly [stored]. Such wastes include, but are not limited to, those which are radioactive, toxic, corrosive, flammable, irritants, or strong sensitizers ...."), sufficiently state that the stored oil-contaminated waste was "hazardous waste" (*See id.*, ¶¶ 18–21, 61) (citing Ark.Code Ann. § 8–7–203(7)). The Court agrees that the allegations stated in the complaint, including the statement that "[t]he term hazardous waste includes petroleum-contaminated wastes," sufficiently allege that the waste purportedly stored by defendants was hazardous waste in violation of the HWMA (*Id.*, ¶ 62).

(Defendants further argue that the complaint does not allege the number of violations of the HWMA, including whether plaintiffs are attempting to recover civil penalties for improper storage, improper transportation, improper disposal, or some combination of the three); when the alleged violations of the HWMA first occurred; when they ceased; whether they are continuing; and where the allegedly improper violations occurred. The State responds that the complaint clearly states

the location of the Highway 36 illegal storage site, identifies May 8, 2013, as the date after which continued storage constituted a violation of Arkansas law, and that, at the time of the complaint, the violation was ongoing (*See id.*, ¶¶ 18–21).

The Court agrees that plaintiffs have sufficiently stated when and where the alleged violations of the HWMA occurred. The State did not respond to defendants' argument that the complaint does not allege the number of violations of the HWMA (including whether plaintiffs are attempting to recover civil penalties for improper storage, improper transportation, improper disposal, or some combination of the three). The Court finds that the State has sufficiently pleaded alleged violations of the HWMA so as to satisfy notice pleading standards and denies defendants' motion on this basis.

### 2. Arkansas Water and Pollution Control Act

#### a. Alleged Water Pollution Violations

■ With regard to count four of the complaint, defendants argue that plaintiffs generally allege that it is unlawful to cause pollution of any waters of the State, reciting the statutory definition of pollution, as well as APC & EC regulations, without sufficient factual bases or details to support their conclusory allegations. Defendants state that the complaint leaves them unable to ascertain how many violations the State is claiming and the true scope and substance of the State's claims. The State responds that a common sense reading of the complaint clearly supports the State's claims that the release of heavy crude oil from defendants' pipeline would cause pollution to waters of the State in violation of the Arkansas Water and Air Pollution Control Act.

Defendants point to the regulations cited in the complaint, arguing that the complaint is not specific enough to allege properly violations of such regulations. First, defendants point to APC & EC Regulation 2.201 requiring that existing instream water uses and the level of water quality necessary to protect the existing uses be maintained and protected. Defendants argue that plaintiffs pleaded no facts to indicate how the water quality has been impacted, in which areas, during which periods of time, and how the water quality negatively impacts existing uses of the waters at issue. Defendants also state that plaintiffs have not sufficiently stated the factual elements with respect to the true color of the allegedly affected water, odor-producing substances, toxicity (general standard), oil and grease (general standard), turbidity, pH, dissolved oxygen, toxicity (specific standard), and oil and grease (specific standard). Defendants state that plaintiffs' failure to plead the specific factual elements of these allegations amounts to a formulaic recitation of the elements of the claims in violation of *Twombly* and *Iqbal.* The State responds that the APC & EC standards are plainly written and that there is no other way to craft the factual statements in a complaint other than to use the specific language of the regulations. Defendants reply that they are entitled to notice of whether the State is seeking to recover separate penalties for alleged violations of the relevant statute, general regulatory standard, and specific regulatory standard, all of which address the same harm.

The Court finds that the complaint sufficiently alleges facts which, if proven, would support relief for the complaint's stated water pollution violations of the Arkansas Water and Air Pollution Control Act and accompanying regulations. The Court further finds that defendants are on notice that, if proven, they may be liable for all the water pollution violations alleged in the complaint, consistent with the laws of the

State. The Court declines to dismiss any of the alleged Arkansas Water and Air Pollution Control Act water pollution violations at this stage in the proceedings.

### b. Alleged Air Pollution Violations

■ Finally, defendants argue that the air pollution allegations contained in count five of the complaint are no more detailed than the alleged water violations in count four and are equally insufficient. Defendants state that plaintiffs' conclusory allegation that "air pollution caused by the release of petroleum has unreasonably interfered with Mayflower residents' enjoyment of life and use of their property in the surrounding area" fails to state a state law air pollution claim and, therefore, that this count should be dismissed. The State responds that this allegation, combined with other allegations in the complaint, including the claim that "[t]he discharged oil is the source of the air contamination that caused the evacuation of homes in the residential neighborhood," provide sufficient facts to describe the alleged air pollution violations (See id., ¶ 32). The Court finds that these facts, if proven, support plaintiffs' air pollution violation allegations under the Arkansas Water and Air Pollution Control Act and state sufficiently a claim upon which relief may be granted.

Defendants argue, as with the water pollution claims, that the State makes no factual allegation as to the number of violations for which a penalty is sought with respect to the air pollution claims. The Court finds that defendants are on notice that they may be liable for all of the air pollution violations alleged in the complaint, consistent with the laws of the State. The Court declines to dismiss any of the alleged Arkansas Water and Air Pollution Control Act air pollution violations at this stage in the proceedings.

\* \* \*

For the foregoing reasons, defendants' motion to dismiss is denied (Dkt. No. 5). Defendants' motion to expedite review of their motion to dismiss is denied as moot (Dkt. No. 41).