**STATE OF WYOMING and George Christopolus, State Engineer for the State of Wyoming, Plaintiffs,**

v.

**Martin R. HOFFMAN, Secretary of the Army, Lt. General William C. Gribble, Jr., Chief of Engineers, Corps of Engineers, Russell Train, Administrator, Environmental Protection Agency, Defendants.**

**No. C76–95K.**

United States District Court, D. Wyoming.

Sept. 21, 1977.

Steven F. Freudenthal, Asst. Atty. Gen. of the State of Wyoming, Cheyenne, Wyo., appearing as counsel for plaintiffs.

Erica L. Dolgin, Dept. of Justice, and Lee E. Caplin, Environmental Protection Agency, Washington, D. C., appearing as counsel for defendants.

## MEMORANDUM OPINION

KERR, District Judge.

This is an action for a writ of mandamus and declaratory relief. Plaintiffs challenge regulations and guidelines promulgated by the United States Army Corps of Engineers and the United States Environmental Protection Agency, respectively, which prescribe the policy and procedures to be followed by the Corps of Engineers in connection with applications for permits authorizing the discharge of dredged or fill material into the waters of an interstate stream located within the State of Wyoming.

The regulations and guidelines were issued pursuant to Section 404 of the Federal Water Pollution Control Act Amendments of the 1972 [Water Act] 33 U.S.C. § 1344.

The Corps of Engineers regulations are codified at 33 C.F.R. Part 209 and were published in the Federal Register on July 25, 1975. 40 Fed.Reg. 31320 et seq. The regulations were revised and reorganized, without any material changes, on July 19, 1977, 42 Fed.Reg. 37122.

Each of the parties has filed a Motion for Summary Judgment and stipulated that there is no dispute as to any genuine issue of fact and that the matter is ripe for Summary Judgment.

In sum, the crux of this case is whether the Water Act authorizes the Federal government to exercise its regulatory jurisdiction beyond the waters that meet the traditional tests of navigability. The legislative history of the Act is clear and the decided cases are many, holding that the Federal regulatory jurisdiction under the Water Act, including Section 404, extends beyond those waters that meet the traditional tests of navigability.

In Section 502(7), 33 U.S.C. § 1362(7), Congress defined "navigable waters" for the purposes of the Water Act to mean "waters of the United States, including the territorial seas." This definition of navigable waters determines the scope of regulatory jurisdiction not only for the Corps of Engineers under Section 404 but also for the Environmental Protection Agency and Coast Guard under other sec-

tions of the Water Act. See *United States v. Ashland Oil and Transportation Company,* 504 F.2d 1317, 1321 (C.A. 6, 1974). Thus a limitation on the definition of navigable waters to traditionally navigable water would restrict not only the Section 404 permit program but other programs as well.

■ The plain meaning of the definition "waters of the United States" is that the term "navigable waters" is not limited to waters which meet the traditional tests of navigability. Furthermore, the objective of the Water Act is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." Section 101(a), 33 U.S.C. § 1251(a). The Act is thus concerned with restoring "the Nation's waters" and not simply those waters which meet the traditional tests of navigability. A limitation of the definition of navigable waters to waters which meet the traditional tests of navigability would conflict with this objective of the Water Act.

Many Federal courts have considered the question of the extent of Federal jurisdiction under the Water Act. Every court that has considered the question has determined that Federal jurisdiction under the Water Act extends beyond those which meet the traditional tests of navigability.

In *Natural Resources Defense Council v. Callaway,* 392 F.Supp. 685 (D.D.C.1975), the Corps of Engineers was ordered to amend its April 3, 1974 regulations for its permit program to take into account the expanded definition of navigable waters called for by the Water Act. The Court stated:

> Congress by defining the term "navigable waters" in Section 502(7) of the Federal Water Pollution Control Act Amendments of 1972, 86 Stat. 816, 33 U.S.C. secs. 1251, et seq. (the "Water Act") to mean "the waters of the United States, including the territorial seas," asserted Federal jurisdiction over the nation's waters to the maximum extent permissible under the Commerce Clause of the Constitution. Accordingly, as used in the Water Act, the term is not limited to the traditional tests of navigability. [392 F.Supp. 686.]

The legislative history supports the statutory language indicating that Federal jurisdiction under the Water Act extends beyond waters which meet the traditional tests of navigability. The bill initially passed by the Senate defined navigable waters as "navigable waters of the United States, portions thereof, and the *tributaries thereof,* including the territorial seas and the Great Lakes." S. 2770, Section 502, 117 Cong. Rec. S. 17483 (daily ed. November 2, 1971), (emphasis added). Thus, on its face, the Senate bill would have extended Federal jurisdiction beyond waters which met the traditional tests of navigability, to the *tributaries of such waters.* In its report on the original Senate bill, the Senate Public Works Committee stated as follows:

> Through a narrow interpretation of the definition of interstate waters the implementation [of the] 1965 Act was severely limited. Water moves in hydrologic cycles and it is essential that discharge of pollutants be controlled at the source. Therefore, reference to the control requirements must be made to the navigable waters, portions thereof, *and their tributaries.* [S. Rep. No. 92–414, 77, 92d Cong., 1st Sess. (1971), U.S. Code Cong. & Admin. News 1972, pp. 3668, 3742 (emphasis added).]

The bill originally passed by the House defined navigable waters as "the navigable waters of the United States including the territorial seas." H.R. 11896, Section 502(7), H.R. Rept. No. 92–911, p. 53, 92d Cong., 2d Sess. (1972). The House Report accompanying the House bill stated:

> One term that the Committee was reluctant to define was the term 'navigable waters.' The reluctance was based on the fear that any interpretation would be read narrowly. However, this is not the Committee's intent. *The Committee fully intends that the term 'navigable waters' be given the broadest possible constitutional interpretation* unencumbered by agency determinations which have been made or may be made for administrative purposes. (H. Rept. No. 92–911, 131, 92 Cong., 2d Sess. (1972), (emphasis added).]

The House Report provides further evidence that Congress intended to extend Federal jurisdiction beyond waters which meet the traditional tests of navigability. In its discussion of the NPDES permit program to be created under Title IV of the House bill, the Report states: "The Committee further intends that as a minimum any discharge which would be subject to the Refuse Act of 1899 would be subject to the provisions of Title IV." H. Rept. No. 92–911, 128, 92d Cong., 2d Sess. (1972). The Refuse Act of 1899, 33 U.S.C. § 407, makes it unlawful to discharge refuse matter not only into "any navigable water of the United States" but also into any "*tributary of any navigable water.*" It further makes it unlawful to deposit material "in any place on the bank of any navigable water, or on the bank of any *tributary of any navigable water.*" See *United States v. Pennsylvania Industrial Chemical Corp.,* 411 U.S. 655, 662, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973). Thus, the House Report shows that the House bill would have extended Federal jurisdiction beyond waters that meet the traditional tests of navigability to, "as a minimum," *tributaries* of such waters and their banks.

The House-Senate Conference Committee deleted the word "navigable" from the definition of navigable waters. The Conference Committee report states as follows:

The Conferees fully intend that the term 'navigable waters' be given the broadest possible constitutional interpretation unencumbered by agency determinations which have been made or may be made for administrative purposes. [H.R.Rept. No. 92–1465, 144, 92d Cong., 2d Sess. (1972).]

Representative Dingell, in commenting on the bill which came from the Conference Committee, stated:

Third, the conference bill defines the term "navigable waters" broadly for water quality purposes. It means all "the waters of the United States" in a geographical sense. It does not mean "navigable waters of the United States" in the technical sense as we sometimes see in some laws . . . Thus, the new definition clearly encompasses all water bodies, including main streams and their tributaries, for water quality purposes. No longer are the old narrow definitions of navigability, as determined by the Corps of Engineers, going to govern matters covered by this bill. [118 Cong. Rec. 9124–9125 (daily ed. Oct. 4, 1972).]

All of the above-quoted excerpts from the legislative history of the Water Act demonstrate that Congress intended to extend Federal jurisdiction under the Water Act to waters other than those that meet the traditional tests of navigability.

The broad coverage of the Water Act was approved by the Court of Appeals for the Sixth Circuit in *United States v. Ashland Oil and Transportation Co.,* 504 F.2d 1317 (C.A. 6, 1974). The parties stipulated that the stream was not navigable in fact. In finding that Water Act jurisdiction has been constitutionally extended to non-navigable streams, the court stated ". . . that Congress' clear intention as revealed in the Act itself was to effect marked improvement in the quality of the total water resources of the United States, regardless of whether that water was at the point of pollution a part of a navigable stream." The court expressed part of the basis for its decision as follows:

It would, of course, make a mockery of those powers if its authority to control pollution was limited to the bed of the navigable stream itself. The *tributaries* which join to form the river could then be used as open sewers as far as federal regulation was concerned. The navigable part of the river could become a mere conduit for upstream waste . . . Pollution control of navigable streams can only be exercised by controlling pollution of their *tributaries.* (Emphasis added.)

The opinions of courts in numerous other cases also state that Federal jurisdiction under the Water Act extends beyond waters which meet the traditional tests of navigability. See *California ex rel. State Water Resources Control Board v. EPA,* 511 F.2d 963, 964 (C.A. 9, 1975), reversed on

other grounds, 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976); *State of Minnesota v. Hoffman,* 543 F.2d 1198, 1200 (C.A. 8, 1976); *Leslie Salt Co. v. Froehlke,* 403 F.Supp. 1292, 1296–1297 (N.D.Cal.1974); *P.F.Z. Properties, Inc. v. Train,* 393 F.Supp. 1370, 1381 (D.D.C.1975); *Weiszmann v. Corps of Engineers,* 526 F.2d 1302 (C.A. 5, 1976); *United States v. Phelps Dodge Corporation,* 391 F.Supp. 1181, 1187 (D.Ariz. 1975); *United States v. GAF Corporation,* 389 F.Supp. 1379, 1383 (S.D.Tex.1975); *Sun Enterprises Ltd. v. Train,* 394 F.Supp. 211, 223–224 (S.D.N.Y.1975); *Conservation Council of North Carolina v. Costanzo,* 398 F.Supp. 653, 673–674 (E.D.N.C.1975).

The issue the plaintiffs raise is therefore not a new one but, rather, has been resolved against their position in several courts of appeals and many district courts.

From the foregoing, it would appear that Section 404 of the Regulations under review in this action are lawful insofar as they extend Federal regulatory jurisdiction to waters other than those that meet the traditional tests of navigability.

Accordingly, an Order will be entered sustaining the Defendants' Motion for Summary Judgment and overruling the Plaintiffs' Motion for Summary Judgment.