161 N.J. Super. 504 (1978)
391 A.2d 1265
AMERICAN DREDGING COMPANY, PLAINTIFF,
v.
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, RICHARD J. SULLIVAN; THOMAS O'NEILL; AND GEORGE F. KUGLER, JR., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 31, 1978.
*506 Mr. Grover C. Richman for plaintiff (Messrs Richman, Berry, Ferren and Tyler, attorneys).
Mr. Keith A. Onsdorff, Deputy Attorney General, for defendants (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
LOWENGRUB, J.S.C.
This is a case of first impression. Plaintiff American Dredging Company (ADC) seeks to have this court declare that the prohibition from placing dredged material on an 80-acre tract of its land in Logan Township, N.J., pursuant to an order promulgated by the Commissioner of the Department of Environmental Protection (DEP), is a taking of its property without payment of just compensation and therefore void. I do not agree. The order of the DEP is a valid exercise of governmental authority.
ADC owns approximately 2500 acres of land in Logan Township. It is in the business of dredging various parts of the Delaware River for both private and governmental entities. Since the 1890s it has placed dredged materials from the Delaware River on its land. On August 13, 1973 DEP, pursuant to the Coastal Wetlands Act of 1970, N.J.S.A. 13:9A-1 et seq., designated approximately 159 acres of ADC's land as wetlands and subject to DEP regulatory authority. Of that portion DEP has heretofore issued permits allowing ADC to deposit dredge spoils on all but approximately 80 acres which surround a rehandling basin of approximately 23 acres. The land of ADC is zoned maritime-industrial. An expert called on behalf of ADC testified that without the restriction imposed by DEP the land had a value of $10,000 an acre, and $1,000 an acre with the restriction imposed by the wetland designation. ADC alleges that the 80-acre tract has no other use than for the deposit of dredge material. On the lands remaining, ADC will be *507 able to deposit dredge spoils for about 15-20 years before the fill deposits reach the maximum height allowed by local ordinance. If ADC were allowed to use the additional 80-acres, it is anticipated it would take more than 20 years to fill its lands.
At the outset we must distinguish between a taking in the constitutional sense for government use, for which compensation is compelled, and restrictions imposed on the use of land through governmental exercise of the police power, for which no compensation is mandated. Sax, "Takings and the Police Power," 74 Yale L.J. 36 (1964); Sax, "Takings, Private Property and Public Rights," 81 Yale L.J. 149 (1971). Troublesome as that dichotomy may be, the issue here is further clouded by the legislative mandate that if the court finds an order promulgated by DEP to be "an unreasonable exercise of the police power, the court shall enter a finding that such * * * shall not apply to the land," and that the method for the determination of the issue "shall be exclusive." N.J.S.A. 13:9A-6. Therefore, were the court to determine that the exercise of the police power in this case was unreasonable, it would have to nullify the order; it could not find the restriction unreasonable and order the payment of just compensation.
A taking may occur by the direct acquisitional act of a governmental entity or it may occur through excessive regulation under the police power. Yara Engineering Corp. v. Newark, 132 N.J.L. 370 (Sup. Ct. 1945). Mr. Justice Holmes in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415-16, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326 (1922) stated:
The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. * * We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.
*508 The determination of whether the effect of governmental action vis-a-vis private property is such as to constitute a "taking" for which compensation must be made is to be determined by consideration of fairness and justice in each case. It is not susceptible of a set formula. In Penn Central Transp. Co. v. City of New York, ___ U.S. ___, ___, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (decided June 26, 1978), Justice Brennan stated that:
In engaging in these essentially ad hoc, factual inquiries, the Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment backed expectations are of course relevant considerations. * * * So too is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by Government * * * then when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. [Citations omitted]
Mere diminution in economic value caused by the governmental restriction on the free use of land has not mandated a determination of taking as an excessive use of the police power. See Consolidated Rock Products Co. v. Los Angeles, 57 Cal.2d 515, 20 Cal. Rptr. 638, 370 P.2d 342 (Sup. Ct. 1962); app. dism. 371 U.S. 36, 83 S.Ct. 145, 9 L.Ed.2d 112; Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (75% loss); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915) (87.5% loss). In addition to the diminution in value, the court must consider the other uses of the affected lands permitted under the restrictive governmental order. See Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). The use restriction must be reasonably necessary to the effectuation of a substantial public purpose or the restriction may constitute a taking. See Nectow v. City of Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928).
*509 In Morris Cty. Land Improve. Co. v. Parsippany-Troy Hills Tp., 40 N.J. 539 (1963), the court had before it the determination of the constitutional validity of portions of defendant township's zoning ordinance. The enactment restricted the use of swamp land and had for its prime object the retention of the land substantially in its natural state, essentially for public purposes. The court found the ordinance was intended to benefit the public in two inter-related aspects: first, as a water-detention basin in aid of flood control, and second, preservation of the land as open space. It also found that the effect of the public uses practically prevented the exercise by a private owner of any worthwhile rights or benefits in the land. It concluded that the zoning plan was invalid as a taking of property without payment of just compensation. The effect of that zoning law caused a private individual to sustain a detriment to legally acquired existing economic values as a consequence of governmental enterprise  in short, a taking for which just compensation is due. See Sax, "Takings and the Police Power," supra. See also, Sax, "Takings, Private Property and Public Rights," supra. Penn Central Transp. Co. v. City of New York, supra. The thrust of the Wetlands Act is the prevention of harm to the public, not the enhancement or improvement of a governmental activity or purpose. I have concluded that the distinction is basic and distinguishes Morris Cty. Land Improv. Co. v. Parsippany-Troy Hills Tp. from this case. I respectfully find that the law of that case is not controlling in the case at bar. Where the effect of the governmental prohibition against use is not in the furtherance of a governmental activity, such as flood control or preservation of land for a park or recreational area, but rather to preserve the land for ecological reasons in its natural environment without change, the consideration of reasonableness of the exercise of the police power must be redetermined. The issue then presented is a determination of which interest shall prevail, the public interest in stopping the despoilation of natural resources or the right of an individual to use his property as *510 he wishes. The focus of the reason for that specific governmental action changes the concept of legislation for the public good to legislation to prevent public harm, which prevention must then be weighed against the owner's undiminished right to use his property.
Although the Wetlands Act was enacted to prevent public harm, the restraints authorized on the use of property must be nevertheless reasonable and not arbitrary. Davidow v. South Brunswick Tp. Bd. of Adj., 123 N.J. Super. 162 (App. Div. 1973).
The legislative purpose giving rise to the statutory enactment may be examined in an effort to ascertain the reasonableness of the governmental action. The Legislature has set forth the purpose of the Wetlands Act as follows:
The Legislature hereby finds and declares that one of the most vital and productive areas of our natural world is the so-called "estuarine zone," that area between the sea and the land; that this area protects the land from the force of the sea, moderates our weather, provides a home for water fowl and for 2/3 of all our fish and shellfish, and assists in absorbing sewage discharge by the rivers of the land; and that in order to promote the public safety, health and welfare, and to protect public and private property, wild life, a marine fisheries and the natural environment, it is necessary to preserve the ecological balance of this area and prevent its further deterioration and destruction by regulating the dredging, filling, removing or otherwise altering or polluting thereof, all to the extent and in the manner provided herein. [N.J.S.A. 13:9A-1]
In accordance with the mandate of the Legislature the Commissioner of Environmental Protection caused the wetlands to be mapped, held hearings and promulgated regulations concerning the type of activity to be permitted in and upon coastal wetlands. The order of August 13, 1973 was entered in conformity with the statute.
The declaration of public policy enunciated by the Legislature has found support in both case law and in legal commentary. Justice Hall, the author of the Morris County Land opinion, supra, has acknowledged that the time has arrived *511 for consideration to be given to our environment lest it be destroyed.
Modern man has finally come to realize  I hope not too late  that the resources of nature are not inexhaustible. Water, land and air cannot be misused or abused without dire present and future consequences to all mankind. Undue disturbance of the ecological chain has its devastating effect at far distant places and times. Increased density of population and continuing residential, commercial and industrial development are impressing these truths upon us. We trust solution of our problems in this vital area can be aided by modern technology and the expenditure of money, but it seems evident that we must also thoroughly respect the balance of nature. [N.J. Sports and Exposition Auth. v. McCrane, 61 N.J. 1, 62-63 (1972) (concurring in part and dissenting in part).]
See also, Note: "Wetland Fill Restrictions Do Not Constitute a Compensable `Taking,' etc." 4 Seton Hall L.R. 662 (Spring 1973).
A 1972 Wisconsin case, Just v. Marinette Cty., 56 Wis.2d 7, 201 N.W.2d 761 (Sup. Ct. 1972), considered the constitutionality of an ordinance with restrictions similar to those in the Wetlands Act. In 1966 Wisconsin enacted a special zoning law which protects water quality through shoreland regulation[1] and grants the authority for the zoning to counties.[2] Marinette County enacted an ordinance *512 which provided for permitted uses,[3] and conditional uses requiring a permit.[4] One of the conditional uses is the filling, drainage or dredging of wetlands.
Six months after the ordinance became effective, Just filled in an area of his property, more than 500 square feet of *513 which was wetlands, without obtaining a conditional use permit. The county sought an injunction to restrain landowners from placing fill material on their property without a permit, and Just sought a declaratory judgment that the shoreland zoning ordinance was unconstitutional. The trial court upheld the ordinance and Just appealed, arguing that the wet-land fill restrictions were unconstitutional since they amounted to a constructive taking of his land without compensation. The Wisconsin Supreme Court found there was no taking, holding that an owner of land has no absolute right to change the essential character of his land "so as to use it for a purpose which it was unsuited in its natural state and which injures the rights of others." 201 N.W.2d at 768. See also Sibson v. New Hampshire, 115 N.H. 124, 336 A.2d 239 (Sup. Ct. 1975).
It is clear that an owner's use of property may be lessened or diminished by governmental order. And that governmental act does not in every instance require payment.
Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. [Pennsylvania Coal Co. v. Mahon, supra 260 U.S. at 413, 43 S.Ct. at 159]
The uncontrolled use of land, if unchecked, is harmful to the public interest, and government may within the scope of the police power regulate that use. If ADC is permitted to fill in the approximately 80-acre tract, it is clear that no protected vegetation, fish or other marine life will again exist in that area. The destruction will be permanent and irreversible. The natural environment as it existed in its original state will give way to a pile of dredge spoil. To the extent that is accomplished the public is damaged. That result cannot be deemed to be a reasonable use of land exempt from the regulation promulgated under the police power of this State.
*514 In the determination that the prohibition of deposit of dredge spoils on the 80-acre tract is not a "taking" we are not limited to a consideration of the 80-acre tract per se; consideration may be given of the entirety of the 2,500 acres. Each segment is not to be viewed microscopically; rather, the vista must encompass the whole.
The court must look at both the character of the action and the nature and extent of the interference with the rights in the parcel as a whole. Penn Central Transp. Co. v. City of New York, supra. The total land owned in Logan Township, of which the 80-acre parcel is a portion, consists of 2,500 acres. 80 acres is approximately 3% of that land area. Additionally, the lowering of value of the wetlands, as testified to by plaintiff's expert, by reason of the wetlands designation is not a depreciation of the use of the land in its natural state but on what the land could be worth if it could be filled.
While loss of value is to be considered in determining whether a restriction is a constructive taking, value based upon changing the character of the land at the expense of harm to public rights is not an essential factor or controlling." [Just v. Marinette Cty., supra at 771]
Sibson v. State, supra. In this case ADC is not prevented by the August 13, 1973 order from using the 80 acres for natural and indigenous uses. The order bans the deposit of dredged spoils because the act of placing fill on the land results in damage to the environment which, in turn, injures the general public. Just v. Marinette Cty., supra.
A restriction against the unfettered use of 3% of plaintiff's land, when weighed against the harm of total destruction, is not unreasonable. Accordingly, I find that the order of the Commissioner of the Department of Environmental Protection of August 13, 1973 does not constitute a taking of plaintiff's land without compensation.
NOTES
[1] "144.26 Navigable waters protection law (1) To aid in the fulfillment of the state's role as trustee of its navigable waters and to promote public health, safety, convenience and general welfare, it is declared to be in the public interest to make studies, establish policies, make plans and authorize municipal shoreland zoning regulations for the efficient use, conservation, development and protection of this state's water resources. The regulations shall relate to lands under, abutting or lying close to navigable waters. The purposes of the regulations shall be to further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty * * *."
[2] "59.971 Zoning of shorelands on navigable waters (1) To effect the purposes of s. 144.26 and to promote the public health, safety and general welfare, counties may, by ordinance enacted separately from ordinances pursuant to s. 59.97 zone all lands (referred to herein as shorelands) in their unincorporated areas within the following distances from the normal high-water elevation of navigable waters as defined in s. 144.26(2) (d): 1,000 feet from a lake, pond or flowage; 300 feet from a river or stream or to the landward side of the flood plain, whichever distance is greater. If the navigable water is a glacial pothole lake, the distance shall be measured from the high watermark thereof."
[3] "3.41 Permitted Uses.

(1) Harvesting of any wild crop such as march hay, ferns, moss, wild rice, berries, tree fruits and tree seeds.
(2) Sustained yield forestry subject to the provisions of Section 5.0 relating to removal of shore cover.
(3) Utilities such as, but not restricted to, telephone, telegraph and power transmission lines.
(4) Hunting, fishing, preservation of scenic, historic and scientific areas and wildlife preserves.
(5) Non-resident buildings used solely in conjunction with raising water fowl, minnows, and other similar lowland animals, fowl or fish.
(6) Hiking trails and bridle paths.
(7) Accessory uses.
(8) Signs, subject to the restriction of Section 2.0."
[4] "3.42 Conditional Uses. The following uses are permitted upon issuance of a Conditional Use Permit as provided in Section 9.0 and issuance of a Department of Resource Development permit where required by Section 30.11, 30.12, 30.19, 30.195 and 31.05 of the Wisconsin Statutes.

(1) General farming provided farm animals shall be kept one hundred feet from any non-farm residence.
(2) Dams, power plants, flowages and ponds.
(3) Relocation of any water course.
(4) Filling, drainage, or dredging of wetlands according to the provisions of Section 5.0 of this ordinance.
(5) Removal of top soil or peat.
(6) Cranberry bogs.
(7) Piers, docks, boathouses."