**AMERICAN DREDGING COMPANY**

v.

**Harry V. DUTCHYSHYN, District Engineer, Philadelphia District U. S. Army Corps of Engineers.**

Civ. A. No. 77–669.

United States District Court,
E. D. Pennsylvania.

Feb. 13, 1979.

Mark D. Alspach, Krusen, Evans & Byrne, Philadelphia, Pa., for plaintiff.

Joan M. Cloonan, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

VanARTSDALEN, District Judge.

Pursuant to Section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403, the defendant, on behalf of the United States Army, Corps of Engineers, issued a "temporary" permit to plaintiff to operate a rehandling basin for dredged material in an area of the Delaware River designated as "Klondike Ditch." The permit expressly provided that it could be modified, suspended or revoked when such was determined to be in the public interest. On February 1, 1977 after notice to plaintiff, the permit was modified so as to preclude plaintiff from depositing dredged material from the rehandling basin onto an area of 521 acres of land owned by plaintiff and adjoining the rehandling basin. Plaintiff seeks to invalidate the modification of the permit, contending that such modification was a taking of plaintiff's private property without just compensation in violation of the fifth amendment to the United States Constitution. The injunctive relief sought will be denied and judgment will be entered in favor of the defendant.

Plaintiff, as part of its regular business, by contract with the federal government maintains the shipping channels of certain sections of the Delaware River, by dredging operations. Plaintiff also does dredging for private businesses along the Delaware River. Essential to the dredging is disposal of the dredged material or spoil. Over a period of years, plaintiff acquired, at substantial capital outlay, tracts of land along the Delaware River for the express purpose of filling the tracts with the dredged material. In the immediate area of the Klondike Ditch, plaintiff owns approximately 2500 acres of land, of which the 521 acres involved in this action are a contiguous part. The 521 acres has little or no economic or market value in its present state except as a disposal site for dredge spoil.

Prior to the issuance in August 15, 1973, of the "temporary" permit, plaintiff had applied to the Corps of Engineers for a permit to operate a permanent rehandling basin in a location designated as "White's Basin", that is near to Klondike Ditch. The White's Basin application remains pending. Defendant contends that plaintiff has failed to supply essential information necessary to complete the required environmental impact study. Plaintiff disputes this contention, but resolution of that issue is not relevant to the present controversy. While the White's Basin application was pending, defendant issued the so-called temporary permit to operate in the Klondike Ditch. The permit, by its express terms, will terminate on December 31, 1983 unless earlier revoked or expressly extended.

The right to modify the permit was set forth in the following language:

This permit may be modified, suspended or revoked by authority of the Secretary of the Army if the Secretary determines that, under the existing circumstances, such action is required in the public interest or if the permittee fails to comply with any of its provisions.

A judgment as to whether or not suspension, modification or revocation is in the public interest involves a consideration of the impact that any such action or the absence of any such action may have on factors affecting the public interest. Such factors include, but are not limited to navigation, fish and wildlife, water quality, economics, conservation, aesthetics, recreation, water supply, flood damage prevention, ecosystems, and, in general the needs and welfare of the people.

In 1974 the Corps of Engineers notified plaintiff that "the Klondike Ditch Rehandling Basin may only be used in connection with disposal areas which were in use at the time of issue of that permit." The effect of this notice was to preclude plaintiff from using approximately 300 acres of land, all of which is also involved in the 521 acres presently in dispute. Plaintiff challenged the validity of this notice by filing action in this court, *American Dredging Company v. C. A. Selleck, Jr.*, Civil Action 74–2943. The defendant did not contend in that action that the notice was a modification of the permit. By unpublished opinion and order dated July 29, 1976, I determined that the notice was ineffective, noting, however, the apparent right of defendant to modify the terms of the permit by proper notice.

Subsequent to the final determination in Civil Action 74–2943, defendant by notice of February 1, 1977 modified the permit whereby the 521 acres were prohibited from receiving the dredge spoil from the Klondike Ditch. Plaintiff promptly thereafter filed the present action seeking injunctive relief from the restrictions imposed by the modification.

By stipulation of counsel, at the trial, the entire transcript of Civil Action 74–2943 was received in evidence. The findings of fact and conclusions of law filed by me in Civil Action 74–2943 are likewise incorporated herein by reference and are to be deemed findings of fact and conclusions of law in this case. In addition any facts stated or conclusions heretofore or hereafter set forth in this opinion shall be deemed to be findings of fact and conclusions of law.

A rehandling basin is an area utilized for temporarily depositing dredge spoil and thereafter removing it from the river. Scows, carrying dredge spoil, are towed to the rehandling area, which is usually a dredged hole or excavation in and along the edge of the river. The scows dump their cargo into the basin. From there, either by dredges, pumps and pipes, or by mechanical excavating machinery, the loose spoil is transported to some other place, ordinarily to closely adjoining low-lying land or shallow water where it is permanently deposited as fill.

The 521 acres in question was acquired by plaintiff by various purchases between 1961 and 1974, at a total purchase price of $622,170.00. What portions were purchased before, and what portions after the grant of the permit on August 1, 1973, does not appear of record. There were additional costs of $396,629 in clearing and diking the land so as to be able to receive and hold the spoil. Thus, the total capital outlay by plaintiff exceeded $1,000,000.00. The land is zoned for "riverfront industrial." Annual taxes are $25,000.00. The land was purchased for the sole purpose of receiving the spoil and the land has no other present potential use to plaintiff. In its present state and subject to the prohibition against filling the land, it is of little or no market value.

Plaintiff, at the trial on the merits, defined the "ultimate issue" to be

whether or not the regulation by the District Engineer which prohibited our using those areas for fill amounted to a taking of our private property for a public use without just compensation.

(N.T. at 4).

Plaintiff makes no claim of lack of procedural due process in the manner in which the modification was effectuated. However, the complaint and pleadings did place in issue the jurisdictional authority of the defendant under 33 C.F.R. 209.120 to impose restrictions on plaintiff's use of its land. Plaintiff contended in the pleadings that the land was above the mean high water level, was fast-land and beyond the jurisdictional reach of the Corps of Engineers which could extend only over navigable waters. That contention has apparently been abandoned.

In any event, whatever may have been the jurisdictional range of the Corps of Engineers under the Rivers and Harbors Act of 1899, under section 404 of the Federal Water Pollution Control Act, 33 U.S.C. § 1344, the Corps of Engineers in issuing dredging permits and permits for the dis-

posal of dredge material has authority over freshwater wetlands. Under the Federal Water Pollution Control Act, "navigable waters" are expressly defined as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). For purposes of section 404 dredging permits, the regulations define as part of the waters of the United States:

Freshwater wetlands including marshes, shallows, swamps and, similar areas that are contiguous or adjacent to other navigable waters and that support freshwater vegetation. "Freshwater wetlands" means those areas that are periodically inundated and that are normally characterized by the prevalence of vegetation that requires saturated soil conditions for growth and reproduction.

33 C.F.R. § 209.120(d)(2)(h). Before a section 404 dredging permit may be granted, consideration must be given to the effect on wetlands. 33 C.F.R. § 209.120(g)(3).

■ There was extensive credible expert factual and opinion testimony that the 521 acres in question came within the regulatory definition of freshwater wetlands, and that the land was ecologically valuable to the Delaware River ecological system. I find as a fact that the land is freshwater wetlands. Although there is disputed evidence as to whether the land would come within the definition of "navigable waters" under the Rivers and Harbors Act, it is clear that under the Federal Water Pollution Control Act, the Corps of Engineers has the right to control the disposal of dredged material upon freshwater wetlands. The right of the federal government to exercise jurisdiction over wetlands and similar areas beyond the classic "navigable waters" concept has frequently been upheld in a long line of cases, some of which are the following: *Leslie Salt Co. v. Froehlke*, 578 F.2d 742 (9th Cir. 1978); *United States v. Ashland Oil and Transp. Co.*, 504 F.2d 1317 (6th Cir. 1974); *United States v. Stoeco Homes, Inc.*, 498 F.2d 597 (3d Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975); *Wyoming v. Hoffman*, 437 F.Supp. 114 (D.Wyo.1977); *Conservation Council of North Carolina v. Costanzo*, 398 F.Supp. 653 (E.D.N.C.1975); *Sun Enterprises Ltd. v. Train*, 394 F.Supp. 211 (S.D.N.Y.1975), *aff'd on other grounds*, 532 F.2d 280 (1976); *P.F.Z. Properties, Inc. v. Train*, 393 F.Supp. 1370 (D.D.C.1975); *Natural Resources Defense Council, Inc. v. Callaway*, 392 F.Supp. 685 (D.D.C.1975); *United States v. Phelps Dodge Corp.*, 391 F.Supp. 1181 (D.Ariz.1975); *United States v. GAF Corporation*, 389 F.Supp. 1379 (S.D.Tex. 1975); *United States v. Byrd*, 9 E.R.C. 1275 (N.D.Ind.1976); *United States v. Smith*, 7 E.R.C. 1937 (E.D.Va.1975). In *Wyoming v. Hoffman, supra*, the regulatory authority of the federal government beyond traditionally navigable waters was specifically upheld.

■ Plaintiff does not question the constitutionality of the Federal Water Pollution Control Act, nor the right of the federal government to assert jurisdiction under that act to the land in question. (See plaintiff's reply brief at 5–6). Plaintiff's contention is that the exercise of this authority, in such a way as to preclude plaintiff from obtaining any practical use or value from its land, constitutes an unlawful taking, relying primarily on *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), where the "unconstitutional taking of private property without just compensation" cases were extensively reviewed. There the Court cited many zoning cases where substantial harm to real estate interests were brought about by zoning restrictions. Analogous to the present case, the Court stated:

Zoning laws generally do not affect existing uses of real property, but taking challenges have also been held to be without merit in a wide variety of situations when the challenged governmental actions prohibited a beneficial use to which individual parcels had previously been devoted and thus caused substantial individualized harm.

*Id.* at 125, 98 S.Ct. at 2660. A review of the zoning cases that have been decided by the Supreme Court, establishes, I believe, a strong tendency to uphold land use restrictions, if based on some sound public good,

even where individually affected landowners suffer substantial financial disadvantage. *Goldblatt v. City of Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962); *Gorieb v. Fox,* 274 U.S. 603, 47 S.Ct. 675, 71 L.Ed. 1228 (1927); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). *See Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 674 n. 8, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976).

Plaintiff does not presently contend that the Corps of Engineers was without jurisdiction to modify the permit, or that in making the modification it violated any of plaintiff's procedural rights. His constitutional argument is not that the taking was unauthorized, but that it was uncompensated. It would thus appear that if, as plaintiff contends, the modification amounted to a "taking" of plaintiff's private property, I may assume that the taking was lawful, subject only to plaintiff being paid just compensation.

The Tucker Act, 28 U.S.C. § 1491, provides a statutory vehicle for receiving just compensation for a non-tortious "taking":

> The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States
>
> . . . .

Where there is a governmental taking of private property, the private individual may file an action in the Court of Claims, under the Tucker Act, without the necessity of other statutory authority, and even though the government does not proceed by condemnation. The right of action is founded on the fifth amendment and needs no further express statutory authority. *Jacobs v. United States,* 290 U.S. 13, 16, 54 S.Ct. 26, 78 L.Ed. 142 (1933). *See United States v. Testan,* 424 U.S. 392, 401, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Plaintiff asserts, however, that it does not seek damages, but only injunctive relief. As stated on page 3 of plaintiff's reply brief:

What Plaintiff seeks is simply a determination that the permit modification is invalid on constitutional grounds.

Nevertheless, as noted above, the actual thrust of plaintiff's constitutional argument is simply that the modification of the permit is a taking without just compensation. Since the Tucker Act affords a procedure whereby plaintiff may receive the just compensation that it seeks, its constitutional claim is thereby vitiated.

I conclude, therefore, that plaintiff is not entitled to injunctive relief. The Corps of Engineers has control of all dredging activities in the Delaware River, and dredging may only be done under a permit. In granting such a permit, clearly the Corps of Engineers should have the right to place reasonable restrictions and limitations upon where the dredged material may ultimately be placed. The permit issued to the plaintiff was by its intent and terms to be temporary and subject to change and modification. Plaintiff had no absolute right to the permit. Defendant, by proper procedure, modified the permit by imposing a limitation upon depositing dredge spoil as fill on certain freshwater wetlands.

Plaintiff does not contend that the prohibition imposed by the permit modification was irrational or arbitrary or that it was not for the public good. In the post-trial brief, page 2, plaintiff notes that the stated reasons for the modification were to preserve the tract as a land resource, valuable to the general public; that the land has ecological value in that it contributes to the marine biological food chain of the Delaware River; that the land provides a habitat for wildlife, thus serving a public purpose. At page 10 of the brief, plaintiff asserts that it is being required to preserve its land in the natural state for the benefit of the public, for which plaintiff remains obligated to pay taxes while the land continues to serve the public purpose for which it has been appropriated. Plaintiff's argument is summarized on page 7 of plaintiff's reply brief.

The plain fact is that the only "public interest" in Plaintiff's land which has been enunciated in this case is Defend-

ant's desire to preserve Plaintiff's land in its natural state as a desirable wildlife habitat. In Defendant's view, Plaintiff's million dollar investment should be dedicated for that purpose in perpetuity. This would clearly amount to a taking of Plaintiff's private property for a public purpose <u>with no compensation whatever.</u> (Emphasis added). Again, it is the last underlined phrase that, by reason of the Tucker Act, faults plaintiff's argument. If, as plaintiff maintains there has been any taking, he is entitled to compensation. Because the permit modification is not otherwise challenged on constitutional, statutory or regulatory substantive or procedural grounds, plaintiff's challenge must fail.

I do not determine whether the modification constitutes a taking for which compensation must be paid. If it does, that is a matter for the Court of Claims. In a closely related analogous case, the Superior Court of New Jersey, Chancery Division, held that a prohibition by the New Jersey Department of Environmental Protection against American Dredging Company depositing dredge spoil on an 80 acre tract of land did not constitute a taking of private property. That decision contained a careful review of federal and state law. *See American Dredging Company v. State of New Jersey*, 161 N.J.Super. 504, 391 A.2d 1265 (1978).